BURGESS *v.* BURGESS and Another.

The complainants filed their bill in chancery against the defendant, their brother, alleging that their mother died seized in fee of certain land; that she purchased said land with her own funds for her own use; that the defendant purchased the shares of all the heirs except those of the complainants, took possession of the whole property, has enjoyed the rents, and refuses to make partition and account for said rents. The defendant answered, admitting the possession and the purchase of the said shares, and states that his father died the owner of certain estate which descended to him and the other heirs subject to their mother's dower; that the defendant purchased the shares of the complainants in said estate; that he and the remaining heirs and the widow sold said estate for 3,600 dollars; that it was then agreed between the widow and heirs that 1,200 dollars of said money should be laid out for lands for the use of said widow during her life, with reversion to said heirs uniting in the sale; that such investment was made in the lands of which the complainants are now seeking partition, and of which the defendant claims to be the sole owner. The proof sustained the facts contained in the answer. The deed made to the widow was in absolute fee. *Held,* that evidence could be offered to show that by fraud, accident, or mistake the deed to the widow was drawn covering a larger interest than was intended, or that the consideration paid for it was the money of other persons, and that the estate was held in trust.

*Held,* also, that the widow held the fee in trust for the heirs other than the complainants. They had no money invested in the property, having sold their interest in their father's estate to the defendant

APPEAL from the *Union* Circuit Court.

PERKINS, J.—*James M. Burgess* and *Basil Burgess* filed their bill in chancery in the *Union* Circuit Court against *John L. Burgess*, alleging, that, in 1840, *Martha Burgess* departed this life intestate, seized in fee of certain real estate situate in *Union* county, which estate is particularly described in the bill; and also, that said *James M., Basil,* and *John L. Burgess*, together with *Betsey L. Ireland, William S. Burgess, Joseph L. Burgess, Walter S. Burgess, Charlotte W. Jarvis, Caroline M. Collins,* and *Lucy S. Runyan* are her only heirs at law. The bill also alleges that said *Martha Burgess* purchased the said real estate with her own funds, for her own use, and that she occupied and enjoyed the same to her death. It further alleges that *John L. Burgess*, the defendant to their bill, immediately on the death of their mother, said *Martha*, pur-

chased the shares of each and all the other of the heirs except the plaintiffs to this bill, (said *James M.* and *Basil Burgess*,) took possession of the whole property, and has enjoyed the rents and profits of it ever since; that he refuses to make partition, and to account for the rents and profits. Prayer, that he may be compelled to do so.

*John L. Burgess* answered, admitting the possession and use, till her death, of the described land, by their mother, *Martha;* that he had purchased the shares of all the heirs except the plaintiffs, *James* and *Basil*, had taken possession and enjoyed the rents and profits, and had refused to make partition and account. As to the title of their mother, *Martha*, and the right of the plaintiffs, *James* and *Basil*, to partition, &c., he states as follows: That *Walter Burgess*, their father, and the husband of said *Martha*, died, in 1815, the owner of certain real estate, which descended to the persons named in this bill as the heirs of said *Martha*, subject to said *Martha's* right of dower; that in 1823 this defendant purchased, and paid for, the share of said *James M. Burgess*, one of the plaintiffs, in said property; and that in 1826, *Basil Burgess*, the other of the plaintiffs, sold his share to *William S. Burgess*. Conveyances were made of both these shares to the respective purchasers; that afterwards, in 1834, the remaining heirs of said *Walter Burgess*, deceased, and their mother, *Martha*, united in the sale of the lands descended to them from said *Walter*, (and in which said *James* and *Basil* had sold out their shares as aforesaid, to certain of their co-heirs,) by which sale the entire and unincumbered title and estate of said lands passed to the purchaser, for the consideration of 3,600 dollars: that it was then and there agreed by and between said *Martha* and said heirs so uniting in the sale, that 1,200 dollars, one-third, of the money received for said land, should be laid out in other lands for the use of said *Martha* during her life, with reversion to said heirs, uniting in the sale, after her death; that said agreement was carried into effect, and that the lands of which the plaintiffs are now seeking partition are those purchased with said 1,200 dollars; of which

lands, as the grantee of all the heirs, he, the defendant, *John L. Burgess,* claims to be the sole owner.

To this answer there is a general replication. The cause was submitted to the Court, and there was a decree for the plaintiffs.

It was proved that *Walter Burgess,* the father of the persons named as heirs in this bill, and the husband of said *Martha,* departed this life the owner of the real estate described by the defendant in his answer; that afterwards, said *James M.* and *Basil,* plaintiffs, sold and conveyed their shares respectively, as also alleged in said answer; that afterwards, the remaining heirs and said *Martha* united in the sale of a clear title of said real estate for 3,600 dollars; that 1,200 dollars of said sum was invested in a farm, the deed for which was made in absolute fee, without any qualification, to said *Martha,* and the use of which she enjoyed during her life; and further, that said defendant, *John L. Burgess,* had purchased the interests of those heirs who united with the mother in the sale of their father's farm. As to the agreement under which that farm was sold, and the 1,200 dollars invested, the evidence is as follows: *Charlotte W. Jarvis,* one of the heirs, states: at the time we sold our old farm, (in 1834,) it was the agreement and understanding among the heirs interested (I mean those who had not before sold their shares in father's estate) and mother, that 1,200 dollars of the price of the farm was to be vested by mother in the purchase of a farm to be used by her during her life; that *John L. Burgess* was to have the care of the farm purchased during her life, and at her death the refusal of it, by paying the heirs who had not sold their interests in father's estate, such sum for their respective shares as might be agreed upon. It was in pursuance of this agreement that *John L. Burgess* took charge of the farm purchased during mother's life, and has purchased the shares of all the heirs interested since her death. And it was understood and believed that *James M.* and *Basil* had no interest whatever in the farm so purchased by mother. She so understood and believed during her life.

It never was mother's intention to change the interest in father's estate. She only consented to a sale of the old farm, (father's farm,) to prevent a sacrifice of the interests of those who had not sold their shares. Mother was sixty-one years old when we sold father's farm, and in her sixty-sixth year when she died, making her death occur about 1839. This bill was filed in 1848. The statements of this witness were corroborated by those of others, but are, of themselves, sufficient to prove the facts, the answer not being, like the bill, denied by oath.

Some facts, not material to the question to be decided, have been omitted in this statement to avoid the prolixity and confusion their insertion would tend to produce. *James M.* and *Basil Burgess* would be legal heirs, with their brothers and sisters, to any property which their mother might transmit to them at her decease. To sustain their bill for partition in this case, they must show that said *Martha Burgess* was the owner, in her own right, of the property they ask a division of. They show a deed for it to her in fee-simple from the previous owner. This is, *prima facie*, sufficient, but is not conclusive. Evidence may be adduced to show that, by fraud, accident, or mistake, the deed was drawn covering a larger interest than was intended, or that the consideration paid for it was the money of other persons, and that the estate was held in trust.

When *James M.* and *Basil Burgess* sold their shares in their father's estate, they no longer had any pecuniary interest in that estate. It belonged to the remaining heirs, subject to the rights of the widow. The fee-simple of their father's farm was in those heirs. The right to the use of one-third of that farm for life belonged to their mother, *Martha*, but the fee-simple of it all belonged to said remaining heirs. When, then, the fee-simple of that farm was sold, the price of it belonged to the same heirs to whom belonged the fee before it was sold, and the use of one-third of that price for life belonged to the same person to whom belonged the use of one-third of the fee. The 3,600 dollars, then, belonged to the heirs who had

not sold their interests in their father's estate. At the sale of that estate by those heirs and the widow, two courses were open to them as to the 1,200 dollars of which the widow was entitled to the use, the choice of which, perhaps, their wish or convenience might dictate. They might invest the 1,200 dollars in such a way that their use should go to the widow for life with a reversion of the principal to said heirs at her death; or said heirs might, the widow consenting, calculate the present value of a yearly annuity of 72 dollars to her (the interest on 1,200 dollars) for her life, considered in relation to her age and condition of health, pay her a sum in gross equal to that value, and take the 1,200 dollars at once to their own use. Had they, at that time, applied to a Court to make for them a disposition of the money, it would have adopted one or the other of these modes. A familiar case in which these doctrines are applied is that of a sale of the equity of redemption upon foreclosure of a mortgage where a widow is entitled to be endowed in any surplus remaining after payment of the mortgage-debt. *Tabele* v. *Tabele*, 1 John. Ch. R. 45.—*Titus* v. *Nielson*, 5 id. 452.—*Swaine* v. *Perine*, id. 482.—*Herbert et al.* v. *Wren et al.*, 7 Cranch 370; and particularly *Maccubbin* v. *Cromwell*, 2 Harris & Gill 443.

In the present case, then, the land of which partition is sought was not, in equity, the absolute property of *Martha Burgess*, and did not descend, as such, to her heirs. She held the fee in trust for those persons whose money paid for it. The plaintiffs in this bill were not of those persons. No money belonging to them was invested in the property. The evidence satisfactorily shows, in connection with all the circumstances of the transaction, that it was the money of those remaining heirs who united with their mother in the sale. These plaintiffs, therefore, show no right to a grant of the prayer of their bill.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. Perry*, for the appellant.

*J. S. Newman*, for the appellee.